LEWIS v. PENNSYLVANIA STEEL CO.

(Circuit Court, E. D. Pennsylvania. May 29, 1893.)

No. 33.

PATENTS FOR INVENTIONS—INFRINGEMENT—ROLLING MILLS.

In letters patent No. 247,665, issued September 27, 1881, to Christopher Lewis for an improvement in continuous rolling mills, the fourth claim, which covers a combination of "laterally adjustable" carriages having a tilting arrangement for the purpose of turning over the rail or girder before it is passed back through the adjoining set of rolls, is strictly limited to a combination of which a laterally adjustable carriage is one of the elements, and there is no infringement in the use of a combination in which the carriage is vertically adjustable, and adapted for use in "three high" rolls.

In Equity. Suit by Christopher Lewis against the Pennsylvania Steel Company for infringement of a patent. Bill dismissed.

Rudolph M. Schick, Frank R. Savidge, Henry N. Paul, and S. S. Hollingsworth, for complainant.

Philip T. Dodge, for respondent.

DALLAS, Circuit Judge.   This case has been argued and considered upon the pleadings and proofs.   It was originally brought for alleged infringement of two letters patent, Nos. 247,665 and 247,-931, but, as now presented, it involves only the fourth claim of the patent No. 247,665, granted to the complainant upon September 27, 1881, for an improved continuous rolling mill.   The only question to be considered is whether certain mechanism, admittedly used by the defendants, is within the scope of this claim; but, before dealing with that question, a brief explanation of the general subject to which the patent relates must be made.

Steel rails are formed by passing a red-hot billet or bloom of metal through a series of passes or apertures between large rollers, by which the billet is gradually reduced to the required size and shape.   Where two rolls, one above the other, are arranged in pairs, and revolve always in the same direction, it becomes necessary to return the bloom, after it has gone through each pass, to the side of the rolls from which it started.   This is the mode of operation where what is called the "two-high roll" system is practiced without modification; but in the specification of the patent in suit a class of rolling mills is referred to "in which several pairs of rolls have their alternate pairs arranged to be run in reverse direction to those next adjacent," and this is the class which the inventor proposed to improve.   Where three rolls, one above the other, form a set, the passes between the lower and middle roll are all in one direction, and those between the middle and upper roll are all in the opposite direction, and thus the necessity for either returning the bloom after it has gone through each pass, or of transferring it from one pair of rolls to another, is avoided; but it is necessary to alternately raise and lower it, so that it may be successively subjected to the action of the several passes. This is the "three-high roll" system.   Both of these systems were in use when this patent was applied for, and the purpose of the applicant was to provide an organism which might be more rapidly worked, and with less labor, than any of the existing mills.   His general scheme, as disclosed by his specification and claims, was radical and fundamental.   It was not confined to a single alteration or addition for effecting one particular object, but comprehended a "new and improved continuous rolling mill."   He was familiar with the three-high roll manner of arrangement, but seems to have directed his attention solely to two-high mills of the modified kind already mentioned.   In his specification he said:

"My invention is an improvement in that class of rolling mills in which several pairs of rolls have their alternate pairs arranged to be run in reverse direction to those next adjacent, and in which a laterally adjustable carriage takes the rail and transfers it from one pair of rolls to the next, so that it is passed through one pair of rolls in one direction and is returned through the next pair of rolls in the reverse direction."

The claims are all in accord with this statement.   Each of the first three is for a combination of a series of pairs of rolls with.

(among other things) "laterally adjustable carriages;" and the fourth, being the claim in question, is as follows:

"(4) The combination, with a set of stationary abutments, L, of the laterally adjustable carriages having tilting support, K, arranged transversely to the same, and provided on their under sides with a bulge or projection adapted to be struck by the said abutments when the carriage is shifted for the purpose of turning over the rail or girder, as set forth."

The specification describes the subject-matter of this claim in these words:

"L is a stationary abutment or cam, bolted down fixedly beneath the carriage in position to be struck by the bulge on the lower side of K as the carriage is shifted, so that when the carriage is shifted laterally the piece, K, is turned over by contact with L, and the rail or other object is also turned over."

The mill of the defendants is of the three-high roll construction. Consequently they do not, and could not, use laterally adjustable carriages, and in connection with the vertically moving carriage which they do use it would not be possible to conform to the mode of action which is especially indicated and described in the claim and specification. Their carriage cannot be "shifted laterally," so as to operate a "tilting support," and therefore a "bulge or projection," adapted to be struck when the carriage is so shifted, would be worse than useless, and is not present, upon the tilting piece of the defendants, which in fact is operated, not by being "struck," but by means of a link connection between the tilting piece and a standard near the side of their table or carriage. There are other differences between the complainant's turn-over and that of the defendants, but they do not result from the different construction and operation of their respective carriages, and I do not deem it necessary to discuss them. It is not possible so to interpret the words "the laterally adjustable carriages" as to make them inclusive of a carriage which is only vertically adjustable; or to hold, without disregarding the necessarily exclusive significance of those words, that the claim in which they occur covers a vertically moving carriage as the equivalent of one whose motion is lateral. The language of the patent is too plain to require construction, and too restrictive for expansion under the doctrine of equivalents. The claim is so expressly limited as to make laterally adjustable carriages a primarily essential element of the combination claimed, and it is a consequence of this limitation that, where such a carriage is not employed, the patented invention is not practiced. It may be conceded that what the patentee claimed he is entitled to; but with respect to the carriage, at least, he confined himself to a distinctly defined device, and, therefore, his monopoly does not extend to a combination in which that specific device is not present, even though it be assumed that he might have claimed it.

A decree will be made dismissing the bill, with costs.